OPINION OF THE COURT
David Elliot, J.
It is ordered that the motion is determined as follows:
Plaintiff commenced this action to recover damages for personal injuries alleged to have been sustained on February 2, 2005 which occurred during the course of his employment with third-party defendant,[1] a company which supplies janitorial services. Plaintiff was assigned by his employer to work as a porter at a building which was owned by defendant 12 West 31st Street Corporation and managed by defendant HRC Corporation (collectively defendants).
The first branch of defendants’ motion seeks, inter alia, a protective order and to disqualify plaintiff’s counsel as counsel to two nonparty witnesses to plaintiff’s accident. Plaintiff exchanged the names of these fact witnesses, Jashwant Persaud and George Cremona, on November 28, 2007 and December 13, 2012, respectively. According to defense counsel, in December 2014, defendants hired an investigator to meet with Persaud. Thereafter, said investigator received a call from plaintiff’s counsel, advising that the scheduled appointment was cancelled due to, inter alia, the latter not having been given notice as to the meeting. Plaintiffs counsel also advised that Cremona — who had not responded to the investigator’s calls — did not wish to be questioned or contacted further. At that time, defendants served subpoenas upon the two witnesses, dated December 17, 2014, to conduct their nonparty depositions. By email correspondence dated January 20, 2015, the office of plaintiff’s counsel requested adjournments of said *861 depositions and further advised that plaintiff’s counsel “will be representing both witnesses for EBT purposes,” and later apprised defense counsel that her office should not contact the witnesses directly. By correspondence dated January 26, 2015, defendants demanded that plaintiff’s attorney withdraw her representation, “as it appears that there is a conflict of interest considering that they are non-party witnesses to your client’s case.” Per her response, dated February 10, 2015, plaintiff’s counsel, in effect, denied defense counsel’s demand. By supplemental notice dated March 23, 2015, defendants demanded that plaintiff’s counsel provide a copy of any retainer agreement between her office and the two witnesses.
“The right to choose one’s own counsel is a valued right, and the restriction of that right must be carefully scrutinized” (6A NY Jur 2d, Attorneys at Law § 90; see Mediaceja v Davidov, 119 AD3d 911 [2014]; Petrossian v Grossman, 219 AD2d 587 [1995] ). Furthermore, generally, a nonparty has the right to be represented by counsel at a deposition (see e.g. St. Louis v Hrustich, 35 Misc 3d 1232[A], 2012 NY Slip Op 50982[U] [Sup Ct, Albany County 2012]; see also CPLR 3113 [c]). A party seeking disqualification based on an alleged conflict of interest must make a clear showing of the following: (1) the existence of a prior attorney-client relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse (see Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123 [1996]; Mediaceja, 119 AD3d at 911-912). Though defendants have not demonstrated that a conflict of interest exists per se (see Hall Dickler Kent Goldstein & Wood, LLP v McCormick, 36 AD3d 758 [2007]; Alba v New York City Tr. Auth., 37 Misc 3d 838 [Sup Ct, NY County 2012]), any doubts about the existence of a conflict — or even the absence of an actual conflict — must be resolved in favor of disqualification so as to avoid the appearance of impropriety (see Cohen v Cohen, 125 AD3d 589 [2015]; Halberstam v Halberstam, 122 AD3d 679 [2014]; Mineola Auto., Inc. v Millbrook Props., Ltd., 118 AD3d 680 [2014]).
The circumstances of this case include the facts that: at least one of the witnesses was willing, at one point, to speak with defendants’ investigator; there was no written retainer agreement executed between the witnesses and plaintiff’s counsel; plaintiff’s counsel’s representation of these witnesses did not come about until attempts were made by defense *862 counsel to informally question them, despite the fact that they were noticed as fact witnesses years prior; plaintiff’s counsel took statements from one of these witnesses prior to her having represented them, as admitted by her during oral argument before the court; plaintiff’s counsel essentially conceded during oral argument that she would have the benefit, at deposition of these witnesses, of acting as both counsel for plaintiff and counsel for the witnesses;[2] and plaintiff’s counsel admitted that it is her common practice to represent witnesses noticed by her clients as part of the scope of representation of her clients. It would appear, thus, from the circumstances presented herein that plaintiff’s representation of these witnesses is no more than a pretext to permit plaintiff to gain a “tactical advantage” by foreclosing the “laudable policy consideration of Niesig [Niesig v Team I, 76 NY2d 363 (1990)] in promoting the importance of informal discovery practices in litigation, in particular, private interviews of fact witnesses,” i.e., it was done solely to impede defendants’ rights to conduct informal discovery (Rivera v Lutheran Med. Ctr., 22 Misc 3d 178, 185 [Sup Ct, Kings County 2008]). Indeed, plaintiff’s counsel indicated that she obtained a statement from one of these witnesses prior to her representation of them, presumably by conducting her own informal discovery for the benefit of her client; yet, simply by virtue of her recent declaration of representation, defendants are not afforded the same benefit for their clients. After all, “Mostly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information” (Niesig, 76 NY2d at 372; see also Arons v Jutkowitz, 9 NY3d 393 [2007]).
Moreover, by virtue of her dual representation, counsel would obtain yet another tactical advantage which would permit her to make objections at the depositions for the nonparty witnesses that she would not otherwise be entitled to make were she not also counsel for plaintiff (see Thompson v Mather, 70 AD3d 1436 [2010]).
*863 For all the reasons above-noted, that branch of the motion for an order disqualifying plaintiff’s counsel from representing these nonparty witnesses is granted. It is noted that nothing prevents these witnesses from retaining a different attorney who has no stake in the outcome of this action, and nothing prevents these witnesses from refusing to speak to defense counsel (or either counsel, for that matter), inasmuch as “discussion with counsel is entirely voluntary” (Arons, 9 NY3d at 410).
Turning to the remaining branch of the motion, defendants seek an order compelling plaintiff to provide written disclosure or otherwise be precluded from testifying as to that which is sought. Specifically, by supplemental demand for authorizations, dated February 18, 2015, defendants demanded an authorization for “Dr. Carfi (as referenced in Dr. Hauskenecht’s narrative report of December 16, 2014),” as same is alleged to be relevant to plaintiff’s damages claim. Plaintiff responded to said demand, stating that “Dr. Carfi is one of plaintiff’s expert witnesses” and that “[h]is report has not been prepared yet” but “[w]hen the report becomes available, plaintiff will forward a 3101 (d) to defendants’ attention.” In opposition to the motion, plaintiff avers that defendants are not entitled to an authorization for his records inasmuch as Dr. Carfi “was retained by counsel as an expert life care planner who performed [sic] any medical treatment on plaintiff,” and that, in preparing his life care plan, Dr. Carfi used only treating doctors’ records, to which defendants already have access.
Inasmuch as (1) Dr. Hausknecht’s narrative report specifically references a “physiatry evaluation by Dr. Carfi on 3/11/13” wherein Dr. Carfi apparently reported that “the patient had mild traumatic brain injury, postconcussion syndrome, lumbar radiculopathy, erectile dysfunction, midback pain and neck surgery”; that his “injuries were permanent in nature and he was unemployable”; and that “[v]arious medical treatments and medications were advised,” and (2) Dr. Hausknecht used Dr. Carfi’s evaluation of plaintiff in generating a history of the patient and in furtherance of his own evaluation of him, plaintiff cannot claim privilege pursuant to CPLR 3101 (d) (see Hoenig v Westphal, 52 NY2d 605, 609 [1981] [“Nor can plaintiffs now claim the exemption for material prepared for litigation, as the requests here on their face seek only reports of specified attending or treating doctors concerning medical history, diagnosis and treatment. Plaintiffs did not below and *864 do not here support a claim that such reports are material prepared primarily, if not solely, for litigation”]).
Accordingly, that branch of defendants’ motion for a protective order disqualifying and/or limiting plaintiff’s counsel from representing the two above-noted nonparty witnesses is granted. That branch of the motion seeking plaintiff’s counsel to produce retainers or other evidence of her representation of the nonparty witnesses is denied as moot. The branch of defendants’ motion for an order compelling plaintiff to respond to their supplemental demand dated February 18, 2015 is granted to the extent that plaintiff, within 20 days after service of a copy of this order together with notice of entry, shall provide defendants with a duly executed HIPAA authorization to secure Dr. Carfi’s records as they relate to his March 11, 2013 evaluation regarding plaintiff’s treatment.

. By order dated December 24, 2014, this court granted third-party defendant’s motion for summary judgment dismissing the third-party complaint. That order appears to be the subject of a pending appeal as well as a motion to renew/reargue, the latter having been fully submitted in the Centralized Motion Part on May 18, 2015 and is currently sub judice.

. It is noted that, though counsel indicated at oral argument that she has never been presented with a scenario in which the answer to a question posed to a nonparty witness would be beneficial to plaintiff but potentially harmful to the witness, it is clear that the consequences presented by representing both plaintiff and a nonparty witness (with potentially differing interests) in this context may not be in the best interest of either client, notwithstanding the fact that those consequences may be unintended.